UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DIAMOND,

        Plaintiff,                              Hon. Richard Alan Enslen

v.                                            Case No. 1:05-CV-423

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 57 years of age at the time of the ALJ's decision and 43 years of age as of the date his insured status expired. (Tr. 25-26, 33). He successfully completed high school, as well as two years of college, and worked previously as a refrigerator repairman. (Tr. 343, 382-83).

Plaintiff initially filed for benefits on January 11, 1983. (Tr. 33E). Plaintiff was found to be disabled as of February 28, 1982, and received benefits through January 30, 1990. *Id.*

Plaintiff next applied for benefits on November 26, 1996, alleging that he had been disabled since February 1982, due to spinal problems. (Tr. 81-84). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 33-33B, 33H-34, 42-45, 49-54). On January 28, 2000, ALJ Paula Zera denied Plaintiff's request for a hearing on the ground that the issues presented by Plaintiff's claim were barred by res judicata. (Tr. 33E-33G). The Appeals Council reversed this determination and remanded the matter for an administrative hearing. (Tr. 70-72).

On August 22, 2002, Plaintiff appeared before ALJ Larry Meuwissen, with testimony being offered by Plaintiff, Plaintiff's wife, and vocational expert, Dr. Samuel Goldstein. (Tr. 335-92). In a written decision dated July 11, 2003, the ALJ determined that Plaintiff was not disabled. (Tr. 19-26). The Appeals Council declined to review the ALJ's determination, rendering it the

Commissioner's final decision in the matter. (Tr. 6-10). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 1989. (Tr. 25, 88-95); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## MEDICAL HISTORY

On March 22, 1982, Plaintiff underwent T2-T12 spinal fusion surgery, performed by Dr. Dale Rowe, to treat Scheuermann' kyphosis.[1] (Tr. 153-54). X-rays of Plaintiff's spine, taken the following day, revealed "a kyphotic angle of 40 degrees," within normal limits. (Tr. 160). X-rays of Plaintiff's spine, taken March 30, 1983, again revealed a "normal" 40 degree kyphotic curve. (Tr. 163).

On August 17, 1995, Plaintiff was examined by Dr. Rowe. (Tr. 177). Plaintiff reported that he was experiencing pain in his lumbar spine and SI joints, as well as morning stiffness in his back and hips. An examination revealed that Plaintiff was "fairly strong." X-rays of his spine revealed that "the curve and fusion are well maintained" and his "hardware is intact." The doctor scheduled Plaintiff to undergo an MRI examination. *Id.*

---

[1] Scheuermann's kyphosis is a condition in which the normal roundback in the upper spine (called a kyphosis) is increased causing an increased roundback (e.g. a hunch back or hump back). *See* Scheuermann's Disease of the Thoracic and Lumbar Spine, available at http://www.spine-health.com/topics/cd/scheuermanns/scheu01.html (last visited on April 19, 2006). The thoracic spine naturally curves forward 20 to 40 degrees. *See* A Patient's Guide to Scheuermann's Kyphosis, available at http://www.spineuniversity.com/public/spinesub.asp?id=48 (last visited on April 19, 2006). Scheuermann's kyphosis is represented by a curvature of the thoracic spine between 45 and 75 degrees. *Id.*

On August 30, 1996, Plaintiff was examined by Dr. John Zeller. (Tr. 193-94). Plaintiff reported that he was experiencing pain in his mid-thoracic spine with "transient" weakness and dysesthesias[2] in his lower extremities. (Tr. 193). An examination revealed that Plaintiff was experiencing "significant mechanical instability," but there was no evidence of "reproducible or significant neurological defect." (Tr. 191, 193). A bone scan revealed evidence of facet arthritis at L4-5 and L5-S1. (Tr. 191). The doctor instructed Plaintiff to participate in a trunk stabilization program and aquatic exercises. (Tr. 192).

On September 21, 1995, Plaintiff returned to Dr. Rowe. (Tr. 176). The results of Plaintiff's MRI revealed only "mild" degenerative changes, with no evidence of disc herniation. (Tr. 175-76). Dr. Rowe concluded that Plaintiff was not experiencing compressive neuropathy, but was instead simply experiencing "an acute spasm which lasts for a few days and then clears up." (Tr. 176). The doctor instructed Plaintiff to participate in physical therapy. *Id.*

On September 30, 1996, Plaintiff participated in a trunk stability test, the results which revealed that he possessed "excellent overall Isometric strength." (Tr. 185, 189). The examiner reported that Plaintiff was "a candidate for aggressive rehab." (Tr. 185).

On October 23, 1996, Plaintiff was examined by Dr. Zeller. (Tr. 189-90). Plaintiff reported that he had "achieved a significant amelioration of his symptoms" and was "much more functional." (Tr. 189). Plaintiff was instructed to continue participating in physical therapy. *Id.*

On January 14, 1998, Plaintiff was examined by Dr. Jeffrey Rosenthal with the Multidisciplinary Pain Center at the University of Michigan Medical Center. (Tr. 246-48). Plaintiff

---

[2] Dysesthesias refers to pain or uncomfortable sensations such as burning, tingling, or numbness. *See* Dysesthesias, available at http://health.families.com/dysesthesias-305-309-gend (last visited on April 19, 2006).

5

reported that he was experiencing chronic low back pain. (Tr. 246). An examination of Plaintiff's back revealed no evidence of gross deformity or tenderness to palpation. (Tr. 247). Plaintiff experienced pain upon rotation, but straight leg raising was negative and an examination of his lower extremities revealed normal strength and reflexes. Plaintiff was diagnosed with mechanical low back pain. *Id.*

Between January 28, 1998, and April 22, 1998, Plaintiff received three epidural steroid injections. (Tr. 249-52, 255-56). On June 3, 1998, Plaintiff was examined by Dr. Rosenthal. (Tr. 260-61). Plaintiff reported that his back pain rated 1 on a scale of 1-10. (Tr. 260). On July 1, 1998, Plaintiff reported that his back pain rated 2 on a scale of 1-10. (Tr. 262).

On March 31, 1999, Plaintiff was examined by Dr. Rosenthal. (Tr. 268-69). Plaintiff reported that he was experiencing low back pain which ranged from 0-8 on a scale of 1-10. (Tr. 268). Motor, sensory, and reflex testing were "without any deficits." (Tr. 269). Plaintiff was given a trigger point injection. *Id.* He also received another epidural steroid injection on May 26, 1999. (Tr. 270-71).

On June 23, 1999, Plaintiff was examined by Dr. Rosenthal. (Tr. 272-73). Plaintiff rated his back pain as 3 on a scale of 1-10. (Tr. 272). The doctor noted that Plaintiff "was in no acute distress sitting in a chair comfortably." Plaintiff was able to heel and toe walk without difficulty, as well as bend to 90 degrees at the waist. *Id.* Straight leg raising was negative and Plaintiff exhibited 5/5 strength in his lower extremities. (Tr. 273). There was also no evidence of sensory abnormality in Plaintiff's lower extremities. *Id.*

On January 31, 2001, Plaintiff rated his back pain as 2 on a scale of 1-10. (Tr. 279).

On July 30, 2001, Plaintiff was examined at the Multidisciplinary Pain Center by Dr. James Colson. (Tr. 288-89). Plaintiff was in no acute distress and walked with a normal gait. (Tr. 288). Palpation of Plaintiff's spine produced "mild" pain in the paraspinous musculature, but there was no evidence of sacroiliac joint discomfort or gluteal tenderness. The results of a neurological examination of Plaintiff's lower extremities were within normal limits. *Id.* Plaintiff reported that he was getting "good pain relief" with his present treatment regimen. (Tr. 289).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from the following severe impairments: (1) status post thoracic spinal fusion with instrumentation for Scheuermann's kyphosis, and (2) degenerative disease of the lumbosacral spine. (Tr. 22). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 22-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff retained the capacity to perform sedentary work[4] activities subject to the following restrictions: (1) he must be able to sit or stand at his option, (2) he cannot climb ropes or scaffolds, and (3) he can only occasionally kneel, stoop, crouch, or crawl. (Tr. 22). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can

---

[4] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Dr. Samuel Goldstein.

The vocational expert testified that as of the date Plaintiff's insured status expired there existed approximately 37,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 384-86). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Evaluated the Medical Evidence

On February 15, 2000, Dr. Rowe was deposed by Plaintiff's counsel. (Tr. 211-36). During his deposition, Dr. Rowe testified that as of the date Plaintiff's insured status expired he lacked the capacity to perform even sedentary work on a regular and sustained basis. (Tr. 231-32). Plaintiff asserts that the ALJ erred by disregarding Dr. Rowe's testimony which establishes that he was disabled prior to the expiration of his insured status.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate her rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

As noted above, Dr. Rowe preformed surgery on Plaintiff in March 1982 and treated Plaintiff through March 1983. The doctor's contemporaneous treatment notes reveal that the surgery was successful. Furthermore, the doctor's treatment notes contain no indication that Plaintiff would be unable to return to some level of work activity after recovering from his surgery. Dr. Rowe did not again examine Plaintiff until August 1995, more than five years after the expiration of his insured status. Dr. Rowe also examined Plaintiff a final time the following month. The results of these examinations revealed no evidence that Plaintiff was unable to perform at least sedentary work activities. As Dr. Rowe concluded, "the curve and fusion" of Plaintiff's spine was "well maintained" and his hardware was "intact." The results of an MRI examination revealed only "mild" degenerative changes, with no evidence of disc herniation. The doctor concluded that Plaintiff was not experiencing compressive neuropathy, but was instead simply experiencing "an acute spasm

11

which lasts for a few days and then clears up." Plaintiff was instructed to participate in physical therapy.

As the ALJ correctly concluded, therefore, the opinion expressed by Dr. Rowe in February 2000 is inconsistent with the results of his own previous examinations. Furthermore, Dr. Rowe's February 2000 opinion is inconsistent with the other medical evidence of record. The ALJ, therefore, properly accorded little weight to the opinion expressed by Dr. Rowe during his deposition.

### b. The ALJ Properly Relied on the Vocational Expert's Testimony

According to Social Security Ruling 00-4p, whenever a vocational expert "provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [vocational expert] evidence and information provided in the DOT [Dictionary of Occupational Titles]." Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR 00-4p, 2000 WL 1898704 at *4 (S.S.R., Dec. 4, 2000). Plaintiff asserts that he is entitled to relief because the ALJ "simply took the vocational expert's word that no conflict existed" between his testimony and the information contained in the DOT.

The vocational expert testified that there existed approximately 37,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. Moreover, the vocational expert expressly stated that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. 386). Plaintiff claims that this latter statement is inaccurate. However, Plaintiff cannot assert such an argument at this juncture. Plaintiff (who was represented by his present counsel at the administrative hearing) had an obligation to question the vocational expert if

he thought that the vocational expert's testimony was inconsistent with the DOT. *See McLachlan v. Barnhart*, 2004 WL 2036294 at *12 (N.D. Ill., Sept. 8, 2004) ("SSR 00-04p does not place the sole duty on the ALJ to question the vocational expert regarding any inconsistencies with the DOT and to resolve any conflicts before relying on the vocational expert's testimony") (citing *Buchholtz v. Barnhart*, 98 Fed. Appx. 540, 546 (7th Cir. 2004)).

Furthermore, it is recognized that identifying alleged discrepancies between the DOT and the vocational expert's testimony at this stage of the proceedings is inappropriate. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("[r]aising a discrepancy [between the vocational expert and the DOT] only after the hearing, as Donahue's lawyer did, is too late"); *Jones v. Barnhart*, 2005 WL 66072 at *12 (N.D. Ill., Jan. 10 ,2005) (same) ("an ALJ must explain a discrepancy between the VE and DOT only when the discrepancy has been identified, and rasing a discrepancy after a hearing has ended is untimely").

Contrary to Plaintiff's assertion, the ALJ complied with Social Security Regulation 00-04p. He asked the vocational expert whether his testimony was consistent with the DOT. The vocational expert testified that his testimony was consistent with the DOT. If Plaintiff believed that such was not the case, he had an obligation to question the vocational expert on the matter. He failed to do so. Accordingly, the undersigned concludes that the ALJ properly relied on the vocational expert's testimony.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  June 7, 2006                                         /s/ Ellen S. Carmody                    
                                                           ELLEN S. CARMODY
                                                           United States Magistrate Judge