UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DIAMOND,

    Plaintiff,

v.

JO ANNE B. BARNHART, COMMISSIONER SOCIAL SECURITY,

    Defendant.

Case No. 1:05-CV-423

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff Michael Diamond's Objection to United States Magistrate Judge Ellen S. Carmody's Report and Recommendation of June 7, 2006 ("Report"), which recommended affirming the Commissioner's denial of Social Security disability benefits. The Commissioner has responded to Plaintiff's Objections. The Court reviews the Report and Recommendation pursuant to 42 U.S.C. § 405(g), to determine whether the Commissioner's decision is supported by substantial evidence and is otherwise in accordance with the law. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986).

The Commissioner, through her Administrative Law Judge ("ALJ"), found that Plaintiff suffered from: (1) status post-thoracic spinal fusion with instrumentation for Scheuermann's kyphosis (an abnormal and increased curvature of the spine); and (2) degenerative disease of the lumbosacral spine. The ALJ ultimately concluded, however, that Plaintiff's impairments, whether considered alone or in concert, failed to satisfy the requirements of any of the listed impairments in Title 20 of the Code of Federal Regulations, Chapter III, Part 404, Subpart P, Appendix 1.

Consequently, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act because he could perform a significant number of jobs despite his limitations.

The Court understands Plaintiff to articulate two points of error with the Report's recommendation that this Court affirm the Commissioner's decision to deny Social Security disability benefits.

I.  **PLAINTIFF'S PHYSICIAN'S OPINION**

First, Plaintiff believes that the ALJ should have accorded the opinion of his physician—Dr. Dale Rowe—more weight. On March 22, 1982, Plaintiff underwent a spinal fusion surgery performed by Dr. Rowe to treat his Scheuermann's kyphosis, whereby metal rods were fused to Plaintiff's spine to counteract his abnormal spinal curvature. After a period of convalescence, Dr. Rowe examined Plaintiff on March 30, 1983. Dr. Rowe's treatment notes reflect that the surgery was a success and Plaintiff's spinal curvature was within a normal range. Dr. Rowe next examined Plaintiff several times in 1988 and reported that his kyphosis looked good from a clinical standpoint, x-rays were normal, mobility was good, and his pain had decreased.[1]

Dr. Rowe did not examine Plaintiff again until August 17, 1995, on complaints of back and hip pain. Dr. Rowe noted that Plaintiff "appears to be fairly strong with real sensory deficits. His back and wounds are healed and hardware does not appear prominent." (Admin. R. 177). X-rays of Plaintiff's spine revealed "that the curve and fusion are well maintained. Hardware is intact." (*Id.*). Dr. Rowe scheduled Plaintiff for a magnetic resonance imaging ("MRI") examination. On September 21, 1995, Dr. Rowe examined Plaintiff and reviewed his MRI results. Dr. Rowe

---

[1] To qualify for benefits, Plaintiff is required to demonstrate that he was disabled on or before the date of termination of his insured status. 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Plaintiff's insured status expired on March 31, 1989.

remarked that Plaintiff's MRI "really doesn't show significant changes except for some disk degenerative process[]" and "his pain sounds more like an acute spasm which lasts for a few days and then clears up." (*Id.* 176).

On February 15, 2000, Plaintiff's counsel deposed Dr. Rowe by telephone. Dr. Rowe testified that as of March 31, 1989, Plaintiff could not perform sedentary work on a regular basis. As the ALJ observed, however, Dr. Rowe's 2000 opinion is inconsistent with his previous examinations and treatment notes. In his prior examinations, Dr. Rowe never mentioned any work limitations and never suggested that Plaintiff could not perform sedentary work. Given the inconsistencies, the ALJ was free to accord Dr. Rowe's opinion less than controlling weight. 20 C.F.R. § 404.1527(d)(4).

Furthermore, Dr. Rowe's 2000 opinion is inconsistent with other medical evidence before the ALJ. *Id.* Dr. S.A. Daniel reviewed Plaintiff's medical records and determined that Plaintiff could perform light work as of March 31, 1989, and this assessment was consistent with his treating physician's findings.[2] Therefore, the Court will deny Plaintiff's Objections on this ground.

## II.  THE VOCATIONAL EXPERT'S TESTIMONY

Next, Plaintiff contends that the vocational expert's testimony conflicts with the DICTIONARY OF OCCUPATIONAL TITLES (4th ed. 2004) ("DOT"). For this, Plaintiff relies on Social Security Ruling 00-4p, 65 Fed. Reg. 75,759 (Dec. 4. 2000), as a basis for error. Social Security Ruling 00-4p provides in pertinent part that:

---

[2] Even if Dr. Rowe were Plaintiff's treating physician (and it's arguable he was not under 20 C.F.R. § 404.1502), the ALJ was free to assign his opinion less than controlling weight because it conflicted with his own and other medical professionals' findings. *Id.* § 404.1527(d)(4).

> Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the [vocational expert's] evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the [vocational expert] is reasonable and provides a basis for relying on the [vocational expert's] testimony rather than on the DOT information.

At Plaintiff's administrative hearing, the ALJ examined the vocational expert about Plaintiff's residual functional capacity and the available jobs he could perform despite his impairments. After listing the kind of occupations Plaintiff could perform and their prevalence in the surrounding area, the ALJ asked the vocational expert: ". . . is your testimony about the job classifications consistent with the [DOT]?" The vocational expert responded: "It is, Your Honor." (Admin. R. 386).

Because the vocational expert's testimony evinced no conflict, there was no inconsistency for the ALJ to inquire about and his duty under Social Security Ruling 00-4p was discharged. Furthermore, even if there were a conflict between the vocational expert's testimony and the DOT, Plaintiff did not raise this argument until briefing that issue in this Court. Plaintiff did not identify any conflict before the ALJ and "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006). The ALJ reasonably relied on the uncontradicted testimony of the vocational expert and if there was any bases for conflict, it was Plaintiff's duty to present this to the ALJ. *Id.* at 375. Plaintiff did not do so and his Objections on this ground will be denied.

Finally, Plaintiff cites Social Security Ruling 83-12, 45 Fed. Reg. 55,566 (Aug. 20, 1980), and submits that "the vocational expert did not explain how the named occupations (bench operator, receptionist, sit-down cashier) are extraordinary in permitting the person to sit or stand at will." (Pl.'s Objs. at 6).  Contrary to Plaintiff's suggestion, Social Security Ruling 83-12 does not require an extraordinary explanation.  Rather, the Ruling only provides that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base."  Soc. Sec. Rul. 83-12.  After the vocational expert listed the occupations Plaintiff could perform, the ALJ asked him "[i]f I were to add a discretionary option on the party of the worker to stand or sit as they deem appropriate . . . would that affect the jobs or numbers in any way?" (Admin. R. 386).  The vocational expert responded that a sit/stand limitation would not affect the occupational base and the Court believes Social Security Ruling 83-12 has been complied with.  The simple fact that the occupational base did not change does mean it has not been clarified with the sit/stand implication.  Plaintiff's Objections on this score will be denied.

In this case, because the Commissioner's decision is supported by substantial evidence and is otherwise in accordance with the law, the Court will affirm the Commissioner's decision to deny Plaintiff Michael Diamond's disability benefits, deny Plaintiff's Objections, and adopt United States Magistrate Judge Ellen S. Carmody's Report and Recommendation.  A Judgment consistent with this Opinion shall issue.

DATED in Kalamazoo, MI:  
    July 25, 2006

      /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE